599 S.E.2d 851

**GRIFFITH & COE ADVERTISING, INC.,
a corporation, and James A. Coe,
Plaintiffs Below, Appellants**

v.

**FARMERS & MERCHANTS BANK AND
TRUST, a banking corporation,
Defendant Below, Appellee.**

No. 31627.

Supreme Court of Appeals of
West Virginia.

Submitted June 8, 2004.

Decided June 24, 2004.

Harry P. Waddell, Esq., Martinsburg, West Virginia, Attorney for the Appellants.

Michael Santa Barbara, Esq., Kathy M. Santa Barbara, Esq., Martinsburg, West Virginia, Attorneys for the Appellee.

PER CURIAM:

In this appeal, the appellant, Griffith & Coe Advertising, Inc., challenges the March 5, 2003, final order of the Circuit Court of Berkeley County, West Virginia, dismissing its action against the appellee, Farmers & Merchants Bank and Trust, a banking institution, for lack of *in personam* jurisdiction. Griffith & Coe brought the action to recover compensatory and punitive damages for the bank's alleged negligence and wrongful failure to recredit to Griffith & Coe's business account funds which had been misappropriated by one of Griffith & Coe's employees. The dismissal for lack of *in personam* jurisdiction was based upon the Circuit Court's findings: (1) that Griffith & Coe and Farmers & Merchants were both Maryland corporations, (2) that the misappropriations by the employee, the payments by the bank from the account and the subsequent communications relating thereto all took place in Maryland and (3) that, during the time when the misappropriations and payments were made, Farmers & Merchants did not transact business in West Virginia.

This Court has before it the petition for appeal, the response of the appellee, Farmers & Merchants Bank and Trust, and all matters of record. For the reasons stated below, this Court is of the opinion that the record supports a *prima facie* showing of *in personam* jurisdiction in West Virginia over Farmers & Merchants in this action.

Specifically, although the Circuit Court correctly found that Farmers & Merchants was not transacting business in this State when the misappropriations and payments from the account were made, the record demonstrates that, prior to Farmers & Merchants' refusal to recredit the account: (1) Farmers & Merchants, in contemplation of engaging in banking activities in this State, filed for and received a Certificate of Authority to do business in West Virginia and (2) began operating four branch banks in this State. In that regard, the refusal to recredit the account was distinguished in Griffith & Coe's complaint as an additional ground of recovery from the bank's alleged negligence in initially making payments upon the employee's misappropriations.

Accordingly, the order of March 5, 2003, is reversed, and this action is remanded to the Circuit Court for further proceedings.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1984, appellant Griffith & Coe, a Maryland corporation, opened a business account in Hagerstown, Maryland, with the appellee, Farmers & Merchants Bank and Trust, a banking institution chartered in Maryland. From May 2000 to August 2001, various funds were misappropriated from the account by one of Griffith & Coe's employees. The employee allegedly presented forged checks and unauthorized automatic debits to Farmers & Merchants and received payments thereon from the account. In October 2001, appellant Griffith & Coe reported the wrongdoing to Farmers & Merchants and requested that the misappropriated funds be recredited to the account. However, asserting that the request was untimely, Farmers & Merchants refused. The refusal was communicated to Griffith & Coe by a letter dated January 16, 2002, from Farmers & Merchants' Executive Vice President.

The misappropriations by the employee, the payments from the account and the subsequent communications relating thereto between Griffith & Coe and Farmers & Merchants all took place in the State of Maryland. Moreover, during the time of the misappropriations and payments, from May 2000 to August 2001, Farmers & Merchants transacted no business in West Virginia, had not sought a Certificate of Au-

thority to do so in this State and owned no assets in West Virginia.

However, on September 7, 2001, prior to the refusal to recredit the account, Farmers & Merchants filed for and, soon after, received a Certificate of Authority to do business in West Virginia. The record indicates that Farmers & Merchants sought the Certificate in order to purchase and operate certain branch banks in this State. On December 7, 2001, Farmers & Merchants began operating four branch banks in Berkeley County, West Virginia.

In May 2002, appellant Griffith & Coe filed an action in the Circuit Court of Berkeley County against Farmers & Merchants Bank and Trust. The complaint alleged that the bank was negligent in honoring the forged checks and unauthorized automatic debits presented to it by Griffith & Coe's employee. Moreover, the complaint alleged that Farmers & Merchants' refusal to recredit the account was "intentional, willful, wanton and malicious and undertaken with deliberate indifference to the harm caused to Griffith & Coe [.]" The complaint concluded with a demand for compensatory and punitive damages.

Farmers & Merchants filed an answer denying the allegations of the complaint. Included in the answer was a motion to dismiss for lack of *in personam* jurisdiction. W.Va. R. Civ. P. 12(b)(2). In considering the motion, the Circuit Court, rather than conducting an evidentiary hearing, relied upon the pleadings and other matters of record. Pursuant to the March 5, 2003, final order, the motion was granted. Setting forth findings of fact and conclusions of law, the order stated in part as follows:

> The defendant [Farmers & Merchants] never did business with plaintiff Griffith & Coe Advertising, Inc., in West Virginia. The alleged wrongful acts or conduct on the part of the defendant occurred in Maryland, if anywhere, and not as a result of defendant's subsequent activities within West Virginia.

## II.

### STANDARD OF REVIEW

Pursuant to Rule 12(b)(2) of the West Virginia Rules of Civil Procedure, a litigant may file a motion to dismiss an action for "lack of jurisdiction over the person." As indicated above, in granting Farmers & Merchants' Rule 12(b)(2) motion, the Circuit Court relied upon the pleadings and other matters of record and did not conduct an evidentiary hearing. Relevant thereto is syllabus point 4 of *State ex rel. Bell Atlantic— West Virginia, Inc. v. Ranson,* 201 W.Va. 402, 497 S.E.2d 755 (1997), which holds:

> When a defendant files a motion to dismiss for lack of personal jurisdiction under W.Va. R. Civ. P. 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a *prima facie* showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a *prima facie* showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence.

*Easterling v. American Optical Corporation,* 207 W.Va. 123, 127, 529 S.E.2d 588, 592 (2000); syl. pt. 2, *Bowers v. Wurzburg,* 202 W.Va. 43, 501 S.E.2d 479 (1998); syl. pt. 2, *Town of Fayetteville v. Law,* 201 W.Va. 205, 495 S.E.2d 843 (1997).

Accordingly, in this action, the standard by which the ruling of the Circuit Court is to be reviewed is whether appellant Griffith & Coe made a *prima facie* showing of personal or *in personam* jurisdiction over Farmers & Merchants sufficient to withstand the motion to dismiss. In that regard, the allegations and inferences in the record are to be viewed in favor of such jurisdiction. *See,* syl. pt. 4 of *Easterling, supra,* holding that a Rule 12(b)(2) motion to dismiss cannot be converted into a motion for summary judgment, even though the circuit court considers mat-

ters "outside the pleadings" in deciding whether dismissal is appropriate.

### III.

### DISCUSSION

█ In *Abbott v. Owens–Corning Fiberglas Corporation*, 191 W.Va. 198, 444 S.E.2d 285 (1994), this Court, in discussing a number of corporations not authorized to do business in this State, observed that two West Virginia long-arm statutes outline when *in personam* jurisdiction can be obtained over a foreign corporation or other nonresident. 191 W.Va. at 207, 444 S.E.2d at 294. The first statute, *W.Va.Code*, 56–3–33, provides in part:

> The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this State, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts [.]

The acts warranting *in personam* jurisdiction under *W.Va.Code*, 56–3–33, include: (1) transacting any business in this State, (2) contracting to supply services or things in this State, (3) causing tortious injury in this State, (4) causing tortious injury in this State by an act or omission outside this State under certain circumstances involving contact with West Virginia, (5) causing injury in this State by breach of warranty under certain circumstances involving contact with West Virginia, (6) having an interest in, using or possessing real property in this State and (7) contracting to insure any person, property or risk located within this State.

While *W.Va.Code*, 56–3–33, is this State's general long-arm statute, the second statute, *W.Va.Code*, 31–1–15 (since repealed and replaced by *W.Va.Code*, 31D–15–1501(d) and (e), but in effect during the time of this action), specifically applies to corporations and supplements *W.Va.Code*, 56–3–33, in terms of the determination of *in personam* jurisdiction. *Abbott, supra*, 191 W.Va. at 207, 444 S.E.2d at 294. As *W.Va.Code*, 31–1–15, provides in part:

> For the purpose of this section, a foreign corporation not authorized to conduct affairs or do or transact business in this State pursuant to the provisions of this article shall nevertheless be deemed to be conducting affairs or doing or transacting business herein (a) if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, (b) if such corporation commits a tort, in whole or in part, in this State, or (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition and such product causes injury to any person or property within this State notwithstanding the fact that such corporation had no agents, servants or employees or contacts within this State at the time of said injury.

Reconciling those statutes with the constitutional principle of federal due process, this Court, in *Abbott*, held in syllabus point 5:

> A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in *W.Va.Code*, 31–1–15 [1984] and *W.Va.Code*, 56–3–33 [1984]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.

Syl. pt. 1, *Easterling, supra;* syl. pt. 1, *Grove v. Maheswaran*, 201 W.Va. 502, 498 S.E.2d 485 (1997); syl. pt. 1, *Lane v. Boston Scientific Corporation*, 198 W.Va. 447, 481 S.E.2d 753 (1996); syl. pt. 3, *Blair v. Ford Motor Credit Company*, 193 W.Va. 250, 455 S.E.2d 809 (1995).

Not cited in *Abbott* was that part of *W.Va. Code*, 31–1–15, concerning foreign corporations which have obtained authorization to do business in West Virginia. In that respect, *W.Va.Code*, 31–1–15, provides:

The secretary of state is hereby constituted the attorney-in-fact for and on behalf of every corporation created by virtue of the laws of this State and every foreign corporation authorized to conduct affairs or do or transact business herein pursuant to the provisions of this article, with authority to accept service of notice and process on behalf of every such corporation and upon whom service of notice and process may be made in this State for and upon every such corporation.

In *Norfolk Southern Railway v. Maynard*, 190 W.Va. 113, 437 S.E.2d 277 (1993), this Court noted that the determination of personal jurisdiction "stands or falls on each case's unique facts [.]" 190 W.Va. at 116, 437 S.E.2d at 280. *See also, Easterling, supra*, 207 W.Va. at 129, 529 S.E.2d at 594. In the proceedings below, both the Circuit Court and Farmers & Merchants emphasized that the acts complained of, i.e., the misappropriations and the payments by the bank from the account, occurred before Farmers & Merchants obtained a Certificate of Authority to do business in West Virginia and before Farmers & Merchants began operating branch banks in this State.

While that is true, the Circuit Court and Farmers & Merchants failed to consider the fact that, after the Certificate of Authority was obtained and after the branch banks were acquired, Farmers & Merchants refused the request of Griffith & Coe to recredit the account. Specifically, the Certificate was obtained in September 2001, the branch banks began operating in December 2001, and the refusal to recredit the business account took place in January 2002. Whether the refusal to recredit was justified is an issue to be pursued upon the remand of this action. However, in terms of the question now before this Court, the act of refusal, occurring when it did after Farmers & Merchants had secured the benefits and privileges of engaging in banking activities in West Virginia, is quite relevant to whether Griffith & Coe made a *prima facie* showing of *in personam* jurisdiction.

As stated above, the refusal to recredit the account was distinguished in Griffith & Coe's complaint as an additional ground of recovery from the bank's alleged negligence in initially making payments upon the employee's forgeries and unauthorized debits. As the complaint alleged, Farmers & Merchants' refusal to recredit the account was "intentional, willful, wanton and malicious and undertaken with deliberate indifference to the harm caused to Griffith & Coe [.]" Moreover, the obtaining of the Certificate of Authority, the acquisition of the branch banks and the refusal to recredit the account all occurred prior to the filing of the complaint in Berkeley County on May 29, 2002.

In syllabus point 1 of *Brown v. Gobble*, 196 W.Va. 559, 474 S.E.2d 489 (1996), this Court stated:

> The deference accorded to a circuit court sitting as factfinder may evaporate if upon review of its findings the appellate court determines that: (1) a relevant factor that should have been given significant weight is not considered; (2) all proper factors, and no improper factors, are considered, but the circuit court in weighing those factors commits an error of judgment; or (3) the circuit court failed to exercise any discretion at all in issuing its decision.

Syl. pt. 2, *Cadle Company v. Citizens National Bank*, 200 W.Va. 515, 490 S.E.2d 334 (1997).

Here, the Circuit Court emphasized that part of Griffith & Coe's cause of action relating to the misappropriations and payments within the May 2000 to August 2001 timeframe but failed to consider a number of other factors, subsequent thereto, which tended to support appellant Griffith & Coe's assertion of *in personam* jurisdiction. In view of those factors, this Court is of the opinion that the record supports a *prima facie* showing of *in personam* jurisdiction in West Virginia over Farmers & Merchants in this action.

IV.

CONCLUSION

Accordingly, the final order of the Circuit Court of Berkeley County, West Virginia, is reversed, and this action is remanded to that

Court for proceedings consistent with this opinion.

Reversed and remanded.

Starcher, J., dissented and filed opinion.